UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

PHILIP WIDGET,

                      Plaintiff,

     - against -

THE TOWN OF POUGHKEEPSIE, THE
POUGHKEEPSIE POLICE DEPARTMENT, LT.
CURTIS MASCARENHAS, OFFICER JOHN J.
WIEGARD, OFFICER SHAWN LEONARD,
OFFICER BRIAN MULLEN, OFFICER DAVID
PALAZZOLO, DUTCHESS COUNTY,
DUTCHESS COUNTY JAIL, WARDEN of the
DUTCHESS COUNTY JAIL, CORRECTIONS
OFFICERS DOE 1-10 (whose identities are
unknown, but who are known to be corrections
officers), POLICE OFFICERS DOE 1-10 (whose
identities are unknown, but who are known to be
police officers), and GLENN LASSITER,

                    Defendants.

**OPINION AND ORDER**

12 Civ. 3459 (ER)

----

Appearances:

Douglas M. Schneider
Summers & Schneider, P.C.
Brooklyn, N.Y.
*Attorney for Plaintiff*

Lawrence J. Fredella
The Law Offices of Lawrence J. Fredella
New York, N.Y.
*Attorney for Plaintiff*

Carl S. Sandel
Morris Duffy Alonso & Faley
New York, N.Y.
*Attorney for Defendants Town of Poughkeepsie, Poughkeepsie Police Department, Lt. Curtis
Mascarenhas, and named Officers*

Ramos, D.J.:

Defendants[1] bring this Motion to Dismiss Plaintiff's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff has failed to state any plausible claims upon which relief can be granted.  Doc. 12.  For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

## I. Background

Plaintiff Philip Widget ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Town of Poughkeepsie (the "Town") and the Poughkeepsie Police Department (the "Municipal Defendants"), various named and unnamed Poughkeepsie Police Department Officers in their individual and official capacities (the "Officers," and collectively with the Municipal Defendants, the "Defendants"), and Glenn Lassiter ("Lassiter"), a private citizen.  Plaintiff alleges § 1983 claims for deprivation of his federal civil rights, false arrest, malicious prosecution, malicious abuse of process, denial of a fair trial, and municipal liability, and a state law claim for assault and battery.  Am. Compl., Doc. 4.

### A.  Factual Background

The following facts have been taken from the allegations in the Amended Complaint, which the Court accepts as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

Plaintiff is a resident of the Town of Poughkeepsie, New York.  Am. Compl. ¶ 6. Defendant Lassiter is also a resident of Poughkeepsie, and allegedly a relative of one of the Doe Corrections Officers.  *Id.* ¶ 14.  At all times relevant to the Amended Complaint, Defendants

---

[1] This motion is brought on behalf of all Defendants except Dutchess County, the Dutchess County Jail, and the Warden of the Dutchess County Jail, who were voluntarily dismissed (Doc. 11), the Doe Defendants, and Glenn Lassiter, who has not answered or otherwise appeared in this action.  *See* Doc. 13.

Curtis Mascarenhas, John J. Wiegard, Shawn Leonard, Brian Mullen, David Palazzolo, and Officers Doe 1-10 were employed by the Town as officers of the Poughkeepsie Police Department. *Id.* ¶ 7.

Prior to the events that led to Plaintiff's arrest, Plaintiff's mother hired Lassiter as a handyman to repair her porch. *Id.* ¶¶ 25-27.  However, Lassiter did not complete the repairs and Plaintiff's mother had to hire another person to finish the work. *Id.* ¶ 28.  Lassiter nevertheless kept the 1997 Lincoln Towncar that Plaintiff's mother had given him as advance payment. *Id.* ¶¶ 27-28.  Lassiter continued to ask Plaintiff's mother for more work and grew angry when she was no longer interested in hiring him. *Id.* ¶¶ 29-30.

On March 6, 2010, Lassiter was driving in his vehicle when he saw Plaintiff walking near his home on Lewis Avenue in Poughkeepsie. *Id.* ¶ 31.  He intercepted Plaintiff, retrieved a pair of pliers from the trunk of his car, and attacked Plaintiff, causing four gashes to Plaintiff's head that required fifteen sutures. *Id.* ¶¶ 31-32.  In self-defense, Plaintiff used a three-inch pocket knife to stab Lassiter, causing superficial wounds to Lassiter's lower leg. *Id.* ¶ 33.

When the police arrived, Plaintiff was bleeding profusely from the head and Lassiter had a superficial wound to his leg. *Id.* ¶ 34.  The Officers recognized Lassiter as a relative of an unidentified Dutchess County corrections officer. *Id.* ¶ 35.  Lassiter told the police that he was looking for a house to rent on Lewis Avenue and that Plaintiff had initiated the attack. *Id.* ¶¶ 39. The Officers then arrested Plaintiff but not Lassiter. *Id.* ¶ 36.  The Officers informed Plaintiff's mother that he had been arrested because he was seen on Main Street swinging a knife and attempting to open Lassiter's car door before stabbing Lassiter. *Id.* ¶ 38.  At some unspecified point in time, witnesses informed the police that there were no houses for rent on Lewis Avenue

3

at the time of the incident.  Id. ¶40. [2]  Lassiter—again at some unspecified point in time—admitted that he struck the first blow and signed a "sworn supporting deposition."  *Id.* ¶ 41. [3]

        Some or all of the Officers were informed that Plaintiff suffered from bipolar disorder, manic depression, paranoia, and panic attacks.  *Id.* ¶ 42.  Plaintiff alleges that the Officers ignored this information, refused to give him proper medical and psychological attention, and refused to allow him to speak with his mother.  *Id.* ¶¶ 42-43.  Plaintiff was taken to a hospital, where he was interrogated by Officer Shawn Leonard until hospital staff asked Officer Leonard to leave.  Officer Leonard then pushed and shoved Plaintiff as he was leaving.  *Id.* ¶ 44.

        Plaintiff was then taken to Dutchess County Jail, where he remained for five days.  *Id.* ¶¶ 48-50.  While in jail, a corrections officer, who Plaintiff believed to be the daughter or step-daughter of Lassiter, screamed at Plaintiff about what he had done to Lassiter and told him to remember her name; Plaintiff understood this to be a threat.  *Id.* ¶ 49.  After he was released, he spent ten months making court appearances in connection with these charges.  *Id.* ¶ 50.  On January 19, 2011, all charges against Plaintiff were dropped before trial "in the interest of justice."  *Id.* ¶ 52.

        Plaintiff alleges that, in connection with his arrest, a false and misleading report was created and forwarded to prosecutors in the District Attorney's Office.  He also alleges that the Officers and Lassiter gave false and misleading testimony or information regarding the facts and circumstances of his arrest.  *Id.* ¶¶ 45-46.

---

[2] Although Plaintiff does not state at such in his Amended Complaint, Plaintiff in his opposition papers suggests that witnesses provided statements and affidavits regarding the availability of rental homes on Lewis Avenue at some point after Plaintiff's arrest.  *See* Pl.'s Opp. Mem. L. at 14.

[3] Plaintiff does not allege in the Amended Complaint that *at the time of arrest* Lassiter told the police that he (Lassiter) had been the instigator.  The Amended Complaint suggests that at some later time Lassiter admitted to having struck the first blow and signed a sworn statement to that effect.  Am. Compl. ¶ 41.

**B.  Procedural History**

Plaintiff commenced this action on May 1, 2011.  Doc. 1.  Originally assigned to Judge Katherine B. Forrest, the case was transferred to the undersigned on May 11, 2012.  Doc. 3. Plaintiff then filed a First Amended Complaint on May 17, 2012.  Doc. 4.  At a court conference held on June 26, 2012, the Court granted Defendants leave to file a motion to dismiss.  On June 27, 2012, Plaintiff submitted a voluntary notice of discontinuance as to his sixth and seventh causes of action, alleging intentional infliction of emotional distress and harassment.  As a result, Dutchess County, the Dutchess County Jail, and the Warden of the Dutchess County Jail were terminated from the case.  Doc. 11.  The Court notes that the seventh cause of action was the only claim against the Corrections Officers Doe 1-10, and accordingly the Corrections Officers Doe 1-10 are no longer parties to this action.  *See* Am. Compl. ¶¶ 96-97.

The remaining issues are the § 1983 claims against the Municipal Defendants and the Officers in their official and individual capacities, and the state law claim against Lassiter.

**II. Discussion**

**A.  Rule 12(b) Motion to Dismiss Legal Standard**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc.*, 624 F.3d at 108.  However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

However, the question on a Rule 12(b)(6) motion "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, No. 10 Civ. 2940 (RWS), 2012 WL 4328329, at *15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B.  Background Law on Section 1983

Plaintiff alleges six causes of action under 42 U.S.C. § 1983 and one cause of action under New York common law.  In order to state a claim under § 1983, a plaintiff must allege that:  (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action,[4] and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action

---

[4] Plaintiff alleges that the Officer Defendants were acting under color of law and pursuant to their authority as public officers at all times relevant to the allegations in the Amended Complaint, Am. Compl. ¶¶ 17-18, and Defendants here do not contest that they were acting under color of state law in their motion papers.

must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

### C. Federal Claims against the Officers and Municipal Defendants

#### 1. Qualified Immunity

The Officers have raised a defense of qualified immunity. Defs.' Mem. L. 8. "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (citations, brackets, ellipses, and quotation omitted).

The Second Circuit recently explained that "[q]ualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions, and protects all but the plainly incompetent or those who knowingly violate the law from liability for damages." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (citations and quotations omitted). Therefore, "[w]hether qualified immunity applies in a particular case generally turns on the objective legal reasonableness of the challenged action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (citations and quotations omitted).

The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under a qualified immunity analysis, "[f]irst, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," *id.*, and then "[s]econd, if the plaintiff has satisfied this first step, whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* The Supreme Court has allowed "district courts . . . to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

### 2. Deprivation of Federal Civil Rights

Plaintiff's first claim under § 1983 alleges that Defendants violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Am. Compl. ¶¶ 54-59. Plaintiff incorporates the entirety of his factual allegations by reference into this claim; however, he does not explain how this claim is distinct from those identified in his other claims for relief. The allegations in the Complaint do not give Defendants fair notice of the substantive and factual grounds upon which the claim rests. Plaintiff's claim is therefore insufficient under Fed. R. Civ. P. 8(a)(2). *Sforza v. City of New York*, 07 Civ. 6122 (DLC), 2009 WL 857496, at *12 (S.D.N.Y. Mar. 31, 2009) (dismissing a § 1983 claim where plaintiff merely listed several Constitutional Amendments and incorporated all his factual allegations without specifying the rights of which he was deprived or the grounds upon which his claim rested). Moreover, Plaintiff does not even attempt to address this claim in his opposition papers. Accordingly, Defendants' motion to dismiss the first cause of action, alleging a deprivation of Plaintiff's federal civil rights, is GRANTED.

### 3.  False Arrest

Plaintiff's second § 1983 cause of action alleges that the Defendants arrested him without probable cause.  Am. Compl. ¶¶ 60-62.  The Second Circuit has explained that a "[§]1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause."  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  In *Jaegly*, the Circuit stated that, "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."  *Id.* at 151-52.  To state a claim for false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 335 N.E.2d 310 (N.Y. 1975)) (internal quotation marks omitted); *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).

The parties do not dispute that Plaintiff has satisfied the first three elements.  They disagree only on whether the confinement was privileged because the Officers had probable cause to arrest.  "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."  *Alvarado v. City of New York*, 453 Fed. App'x 56, 58 (2d Cir. 2011) (quoting *Weyant*, 101 F.3d at 852) (internal quotation marks omitted).  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Jaegly*, 439 F.3d at 152 (citation and internal quotation marks omitted).

Because the Officers have raised qualified immunity as a defense, they need not demonstrate that they had *actual* probable cause to arrest.  The Second Circuit has stated

> [I]n the context of allegations of false arrest, that an arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.

*Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citation and internal quotation marks omitted).  This more lenient standard has become known as "arguable probable cause."  *See id.*; *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (applying arguable probable cause in a false arrest analysis).

In determining whether the Officers had arguable probable cause to arrest Plaintiff, the Court's inquiry is confined to the facts known by the arresting officers at the time of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004); *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).  Since probable cause is an objective standard which excludes consideration of the subjective motivation of the arresting officers, *Southerland v. City of New York*, 681 F.3d 122 (2d Cir. 2012), Plaintiff's allegation that the Officers were motivated by a policy to show loyalty to fellow officers is excluded from this analysis.  Also excluded from the analysis is Plaintiff's allegation that "some or all of the Officer Defendants [who responded to the scene] recognized Lassiter as a relative of a Dutchess County correction's [sic] officer."  Am. Compl. ¶ 35.

The Amended Complaint alleges that when the Officers responded to the scene, Plaintiff had admittedly stabbed Lassiter with a three-inch pocket knife, causing visible injuries.  *Id.* ¶¶ 33-34.  This alone gave the Officers probable cause to arrest Plaintiff for a number of offenses, including Assault in the Second Degree, N.Y. Penal Law § 120.05 ("A person is guilty of assault

in the second degree when… with intent to cause physical injury to another person, he causes

such injury to another person by means of a deadly weapon or dangerous instrument.").

The Second Circuit has found probable cause as a matter of law in arrests based on the

information provided by individuals claiming to be the victim of a crime, absent circumstances

that cast doubt upon the victim's veracity.  *Jean v. Montina*, 412 Fed. App'x 352, 353-54 (2d

Cir. 2011); *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001).  Plaintiff claims that

circumstances at the time of arrest raised doubts about Lassiter's veracity and should have

prompted a more thorough investigation.  Specifically, Plaintiff alleges that he acted in self-

defense, that he sustained injuries more severe than Lassiter's, and that Lassiter admitted to

striking the first blow.  Am. Compl. ¶¶ 33, 34, 41. [5]

Justification, which includes self-defense, is an exculpatory defense.  N.Y. Penal Law §

35.15.  However, there is no duty on an arresting officer to investigate exculpatory defenses

offered by the person being arrested or to assess the credibility of unverified claims of

justification.  *Jean*, 412 Fed. App'x. at 353-54 (quoting *Jocks*, 316 F.3d 135-36).  "Once a

police officer has a reasonable basis for believing there is probable cause, he is not required to . .

. eliminate every theoretically plausible claim of innocence before making an arrest."  *Ricciuti*,

124 F.3d at 128; *Moscoso v. City of New York*, 92 F. Supp. 2d 310, 314 (S.D.N.Y. 2000).  It

would be impractical to impose on law enforcement officers a burden of proving wrong all

innocent explanations before making an arrest.  *Rennols v. City of New York*, 00 Civ. 6692

(NGG), 2003 WL 22427752, at *3 (E.D.N.Y. Oct. 23, 2003), *aff'd*, 124 Fed. App'x 66 (2d Cir.

---

[5] Plaintiff does not allege in the Amended Complaint that *at the time of arrest* (1) he told the police that he was acting in self-defense, or (2) that Lassiter told the police that he (Lassiter) had been the instigator.  The Amended Complaint suggests that at some later time Lassiter admitted to having struck the first blow and signed a sworn statement to that effect.  *See* Am. Compl. ¶ 41.

2005). The crucial question then, is whether the arresting officers deliberately disregarded facts

known to them which established justification. *Jocks*, 316 F.3d at 136.

There is no allegation that the Officers had any personal knowledge of the events leading

up to the altercation. *See id.* at 137-38 (distinguishing between an officer who was personally

involved in a fight with the arrestee and an officer who, arriving later, made the arrest after

observing the complaining witness' injuries and crediting his version of the events). Plaintiff

admits that Lassiter sustained visible injuries. *Cf. Sankar v. City of New York*, 867 F. Supp. 2d

297, 306-07 (E.D.N.Y. 2012) (determining that further investigation may have been required

where officers knew of a prior contentious relationship between the parties and the complaining

witness had no visible injuries to support her allegations). Thus, the facts available to the

Officers at the time of arrest were that: (1) there had been a violent altercation between the two

men; (2) Lassiter had been stabbed; and (3) Plaintiff was holding a knife. On these facts, the

Officers were entitled to credit Lassiter's version as a victim. *See Jean*, 412 Fed. App'x at 353-

54. Even if Plaintiff were ultimately able to establish justification, the arresting Officers were

not required to adjudicate the issue at the time of arrest. At the very least, officers could

reasonably disagree about whether probable cause existed, thus establishing arguable probable

cause. *Lee*, 136 F.3d at 103. At worst, the Officers "failed to investigate and learn facts that

they never knew, after hearing a second version of the story they did not have a duty to credit."

*Rennols*, 2003 WL 22427752, at *4.

Thus, even accepting Plaintiff's version of the facts, the Officers had at least arguable

probable cause to arrest Plaintiff despite his claims of justification. *Id.* at *5 (finding arguable

probable cause where officers lacked knowledge of facts establishing self-defense); *Ricciuti*, 941

F.2d at 128 (finding probable cause where plaintiff claimed self-defense but did not deny causing

the alleged victim's injuries).  Therefore, Defendants' motion to dismiss Plaintiff's claim of false arrest is GRANTED.

### 4.  Malicious Prosecution

Plaintiff's third claim alleges malicious prosecution in violation of § 1983.  Am. Compl. ¶¶ 63-75.  A claim for malicious prosecution under § 1983 is "substantially the same" as a claim for malicious prosecution under New York law.  *Jocks*, 316 F.3d at 134.  To prevail on a claim for malicious prosecution, a plaintiff must show that:  (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in his favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted with malice. *Manganiello*, 612 F.3d at 161; *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

Here, the District Attorney dropped all charges against Plaintiff "in the interest of justice."  Am. Compl. ¶ 52.  No further reason for dismissal is provided.  Defendants contend that dismissal in the interests of justice does not provide the favorable termination required for a malicious prosecution claim and they rely on *Singer* for support.  Defs.' Mem. L. 11.  In *Singer*, the Second Circuit, interpreting New York law, held that "a dismissal in the interests of justice cannot provide the favorable termination required as the basis for a claim of malicious prosecution."  *Singer*, 63 F.3d at 118 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992)) (alterations and internal quotation marks omitted).  However, this argument is unavailing because the New York Court of Appeals has recently clarified that there is no "per se rule that a dismissal in the interest of justice can never constitute a favorable termination . . . [T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused."  *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 357, 368 (S.D.N.Y. 2010) (quoting *Cantalino v. Danner,* 96 N.Y.2d 391, 396 (2001)) (internal quotation marks omitted).

13

The Court need not decide whether the prosecution was terminated in Plaintiff's favor, however, because as with false arrest claims, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72.  Because the Court has already found that the Officers had at least arguable probable cause to arrest, the malicious prosecution claim also fails. *See Jaegly v. Couch*, 168 Fed. App'x 480, 481-82 (2d Cir. 2006) (applying the arguable probable cause standard in a malicious prosecution case in which the defendants raised qualified immunity as a defense).

Exculpatory evidence found after arrest may dissipate probable cause to continue a prosecution. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).  However, Plaintiff was charged based on the same information the Officers had when he was arrested. Plaintiff does not allege that any intervening facts were discovered after the arrest that revealed the groundless nature of the charges.[6]  Accordingly, Defendants' motion to dismiss the federal malicious prosecution claim is GRANTED.

### D.  Malicious Abuse of Process

Plaintiff's fourth § 1983 claim alleges malicious abuse of process—that the Officers arrested Plaintiff in order to show loyalty to a fellow officer of the Dutchess County Jail by protecting her relative, Lassiter.  Am. Compl. ¶¶ 76-80.  The Second Circuit analyzes malicious abuse of process claims under § 1983 by reference to state law. *Savino*, 331 F.3d at 76.  Under New York law,

> [A] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Id.* (citation and internal quotation marks omitted).

---

[6] As noted above, even if Lassiter admitted to striking the first blow, this admission does not automatically establish justification.

"The gist of abuse of process is the abuse of process *after* it is regularly issued."  *Cook v. Sheldon*, 43 F.3d 73, 80 (2d Cir. 1994) (emphasis added) (citation and internal quotation marks omitted).  The mere issuance of criminal process does not give rise to a claim unless defendants pursue a collateral objective after the process is issued.  *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995).[7]  A malicious motive alone does not give rise to an abuse of process claim.  *Savino*, 331 F.3d at 77 (citing *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)); *Hauser v. Bartow*, 7 N.E.2d 268, 269 (N.Y. 1937) ("It is not enough that the actor have an ulterior motive in using the process of the court.  It must further appear that he did something in the use of the process outside of the purpose for which it was intended.").

Plaintiff alleges that Defendants' collateral objective was to show loyalty to a fellow officer by protecting her relative, Lassiter.  Am. Compl. ¶ 78.  However, this allegation only provides an improper motive for Plaintiff's arrest.  There is no indication that any Defendant sought to improperly use the legal process *after* it was issued.  While arrest may constitute regularly issued process subject to abuse, Plaintiff does not allege that Defendants tried to compel or prevent any act by issuing process.  *Cf. Sheldon*, 43 F.3d at 80 (holding that having plaintiff arraigned was legal process subject to abuse where defendants left plaintiff in jail for longer than necessary in order to exact retribution); *Tadco Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010) (holding that arrest was a sufficient basis for an abuse of process claim where defendants had plaintiff arrested in order to gain advantage in their contractual disputes).  Likewise, Plaintiff's allegation that he had to appear in court in connection

---

[7] In *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 530 (1991), the New York Court of Appeals considered the possibility that lack of improper conduct after issuance of process may not necessarily defeat an otherwise viable abuse of process claim.  Nevertheless, the court left the question open.  *Id.*  The court's analysis in *Parkin* was dicta and this Court remains bound by the law of the Second Circuit, which requires improper use of process *after* it is regularly issued.  *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (citing *Sheldon*, 43 F.3d at 80).

with the charges brought against him, Am. Compl. ¶ 50, is insufficient to state a valid claim in the absence of allegations of other abuse of process. *See Lopez*, 901 F. Supp. at 692 (dismissing plaintiffs' claim because the fact that plaintiffs would have been required to appear in response to the issuance of desk ticket appearances was insufficient to state a claim in the absence of other abuse of process).

A malicious abuse of process claim also requires intent to do harm without excuse or justification. Probable cause negates this element. *Sforza*, 2009 WL 857496, at *17 ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process, particularly the second element"). As discussed above, the arresting Officers had arguable probable cause to arrest Plaintiff. Because Plaintiff fails to properly allege the required elements, Defendants' motion to dismiss the malicious prosecution claim is GRANTED.

### E.  Deprivation of a Right to a Fair Trial

Plaintiff's fifth § 1983 claim alleges deprivation of the right to a fair trial. A § 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted. *Fudge v. Phoenicia Times*, 09 Civ. 0301, 2009 WL 2568576, at *2 (N.D.N.Y. Aug. 19, 2009) ("To the extent Plaintiff claims that he was denied the right to a fair trial due to the pre-trial release of false information concerning him, such a claim must be dismissed because there was no trial"). Here, all charges against Plaintiff were dismissed prior to trial. Am. Compl. ¶ 52. Further, Plaintiff has implicitly abandoned this claim as he did not oppose Defendants' motion to dismiss this count. Therefore, Defendants' motion to dismiss Plaintiff's claim for denial of the right to a fair trial is GRANTED.

16

**F.  Municipal Liability Pursuant to 42 U.S.C. § 1983 ("*Monell* Claim")**

Defendants also seek to dismiss Plaintiff's § 1983 claims against the Town for failure to adequately allege municipal liability pursuant to *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell*").  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co.*, 526 U.S at 49-50.  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer*, 63 F.3d at 119 (citing *Adickes*, 398 U.S. at 150).  Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.*

A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.  A section 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690-91.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997); *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under … [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two prong test for § 1983 claims brought against a municipality.  "First, a plaintiff must 'prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely

employing the misbehaving officer.'"  *Johnson v. City of New York*, 06 Civ. 09426, 2011 WL

666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44

(2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or

custom and the alleged deprivation of his constitutional rights.  *Id.*  (quoting *Brandon v. City of

New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).[8]

      To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the

existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions
> taken or decisions made by government officials responsible for establishing
> municipal policies which caused the alleged violation of the plaintiff's civil rights;
> (3) a practice so persistent and widespread that it constitutes a custom or usage
> and implies the constructive knowledge of policy-making officials; or (4) a failure
> by official policy-makers to properly train or supervise subordinates to such an
> extent that it amounts to deliberate indifference to the rights of those with whom
> municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation

marks omitted); *see also Brandon*, 705 F. Supp. 2d at 276-77 (quoting *Moray* and updating

citations to cases).

      Plaintiff cannot satisfy the first prong necessary to establish *Monell* liability.  First, the

Amended Complaint lacks sufficient allegations to indicate the existence of a formally

recognized policy adopted by the Town.  Plaintiff alleges that the municipal defendants maintain

three policies or customs:  (1) fabricating evidence against innocent persons erroneously

arrested; (2) arresting innocent persons who acted in self-defense; and (3) protecting relatives of

Dutchess County Corrections Officers from arrest and incarceration.  Am. Compl. ¶ 102.

However, these conclusory allegations are not otherwise supported.

---

[8] Defendants' motion to dismiss does not contain any arguments that relate to the second prong of the claim;
therefore, the Court's analysis of the adequacy of Plaintiff's *Monell* claim is limited to a consideration of allegations
sufficient to demonstrate the first prong of the test.

Second, Plaintiff does not allege that any of the Officers involved in his arrest have policymaking authority.  Only municipal officials who have "final policymaking authority" with respect to the activities that allegedly violated a plaintiff's constitutional rights "may by their actions subject the government to § 1983 liability."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999) ("[T]he decisionmaker must be responsible for establishing *final government policy* respecting the particular activity [giving rise to Plaintiff's claims] before the municipality can be liable." (citing *Pembaur v. City of Cincinnati*, 475 U.S. 479, 481 (1986)) (emphasis in original).  Plaintiff does not allege that *any* of the Officers are final policymakers for the Town nor does the Amended Complaint contain any factual allegations from which such authority could be inferred.

Plaintiff also does not sufficiently allege facts that demonstrate a consistent and widespread practice by the Town.  Although a plaintiff is not required to identify an express rule or regulation to state a *Monell* claim, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti*, 941 F.2d at 123) (internal quotation marks omitted).  Plaintiff does not claim that these practices have ever been directed against anyone other than himself.  Because he only alleges the use of these practices in one instance by officers below the policy-making level, his allegation that these practices are so widespread so as to establish a custom or policy is unsubstantiated.  Without more, this Court cannot "infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

Plaintiff also alleges that the Town failed to properly train and supervise its employees regarding investigation of crimes, making arrests, and dealing with situations involving relatives of officers employed by the Dutchess County Jail.  Am. Compl. ¶ 106.  A city could be held liable for a single instance of misconduct by a low-level employee if, under the circumstances, the unconstitutional consequences of a failure to train or supervise were "patently obvious." *Connick*, 131 S. Ct. at 1361.  When the municipality does not respond to the obvious need for training or supervision, its deliberate indifference or acquiescence may properly be considered a city policy that is actionable under § 1983.  *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (U.S. 2012).

A plaintiff must show that the municipality has "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights."  *Connick*, 131 S. Ct. at 1360.  "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities…'"  *Id.*  (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989)) (emphasis in original).  The duty to train and supervise arises in order to guide subordinates in their discretionary exercise of municipal power.  *Cash*, 654 F.3d at 336.  A particular training need, however, may only become apparent to the municipality after a pattern of violations arising under substantially similar circumstances.  *Id.; see also Connick*, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

Here, Plaintiff's allegations are insufficient to show that the need for training or supervision was patently obvious.  While a plaintiff is unlikely to have information about the municipality's training programs at the pleading stage, Plaintiff does not allege similar incidents

or a pattern of constitutional violations.  *Cf. Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 46

(E.D.N.Y. 2011) (denying motion to dismiss where plaintiff identified other instances of hearing

officer misconduct in addition to alleging failure to train).

Even when taken as true, the allegations in the Amended Complaint do not show actual

or constructive notice of a need to train or supervise.  Without notice and deliberate indifference,

there is no valid *Monell* claim because no municipal policy or custom is established.  *Cf.*

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (denying summary

judgment where municipality had notice of need for supervision where chief of police was

present to witness, and perhaps encourage, the police misconduct); *Toliver v. City of New York*,

10 Civ. 3165 (PAC) (JCF), 2011 WL 4964665, at *5 (S.D.N.Y. Oct. 18, 2011) (granting motion

to amend where plaintiff alleged that he put the city on notice of its officers' illegal conduct, but

the officers continued to harass and falsely arrest him, and the city failed to retrain, discipline,

fire or otherwise deal with its officers' illegal conduct).  Therefore, Plaintiff fails to "substantiate

his allegations with sufficient facts about his or others' experiences that suggest the existence of

a failure to train or supervise to such an extent that it amounts to deliberate indifference to the

rights of the general public."  *Nesheiwat v. City of Poughkeepsie*, *N.Y.*, 11 Civ. 7072 (ER), 2013

WL 620267, at *4 (S.D.N.Y. Feb. 13, 2013).

Finally, even if the alleged policies were sufficiently plausible to survive Defendants'

motion to dismiss, his *Monell* claim cannot stand without an underlying constitutional violation.

*Am. Mfrs. Mut. Ins. Co.*, 526 U.S at 49-50; *Singer*, 63 F.3d at 119.  There was no violation of

Plaintiff's rights because the Officers had probable cause to arrest Plaintiff.  Because there is no

underlying constitutional violation and the Amended Complaint fails to establish a municipal

policy or custom, Defendants' motion to dismiss Plaintiff's § 1983 *Monell* claim is GRANTED.

### G.  Officer Doe Defendants

Plaintiff has also asserted multiple claims against ten Officer Doe defendants who are identified in the Amended Complaint as police officers employed by the Poughkeepsie Police Department.  Am. Compl. ¶ 7.  Plaintiff makes no further reference to the unnamed officers in his factual allegations, but merely refers to the municipal defendants and officers collectively in his claims.  Plaintiff also omits any reference to the unnamed officers in his opposition to Defendants' motion.  The Court thus concludes that Plaintiff has abandoned his claims against Officers Doe 1-10.  *Southerland v. City of New York*, 680 F.3d 127, 139 n.12 (2d Cir.), *reh'g en banc denied*, 681 F.3d 122 (2d Cir. 2012), *petition for cert. filed*, No. 12-215 (Aug. 15, 2012); *see also Brandon*, 705 F. Supp. 2d at 268 (collecting cases where plaintiff's claims were dismissed as abandoned based on failure to address them in opposition to defendant's motion). Therefore, Plaintiff's claims against Officers Doe 1-10 are DISMISSED.

### III. Plaintiff's Request to File a Second Amended Complaint

In his opposition papers, and without having previously received leave from this Court, Plaintiff requests that the Court grant leave to replead pursuant to Fed. R. Civ. P. 15(a).  Pl.'s Opp. Mem. L. 20.  Leave to amend a pleading under Fed. R. Civ. P. 15(a) should be freely granted.  *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002).  Nevertheless, district courts have broad discretion in deciding whether to grant leave to amend and may deny such a request when amendment would be futile.  *Nesheiwat*, 2013 WL 620267, at *5 (citing *Pasternack v. Lab. Corp. of Am.,* No. 10 Civ. 4426(PGG), 2012 WL 3871348, at *7 (S.D.N.Y. Sept. 6, 2012)).  An amendment is futile where it would not be able to cure the complaint's deficiencies in a manner that would survive a motion to dismiss.  *Id.*

Plaintiff has specified in his opposition papers the allegations he would add to the Complaint.  Pl.'s Opp. Mem. L. 20.  As noted by Defendants, however, Plaintiff has not attached a Proposed Amended Complaint or requested a pre-motion conference as required by this Court's rules.  *See* Individual Practices Rule 2(A)(ii).

Further, Plaintiff has failed to show how his proposed additional allegations would survive a motion to dismiss.  The proposed amendments do not negate arguable probable cause because they do not provide additional facts known to the Officers at the time of Plaintiff's arrest.  Therefore, Plaintiff's false arrest, malicious prosecution, and malicious abuse of process remain unaffected because probable cause is a defense to these claims.  *Alvarado*, 453 Fed. App'x at 58; *Savino*, 331 F.3d at 72; *Sforza*, 2009 WL 857496, at \*17.  Plaintiff cites three cases brought against the municipal Defendants to show a pattern of violations, but there is no indication that the cases cited arose in substantially similar circumstances so as to give the Town sufficient notice of a training need.  *Cash*, 654 F.3d at 336.  Regardless, Plaintiff's municipal liability claim also remains unaffected because there is no underlying constitutional violation.  *Singer*, 63 F.3d at 119.  The proposed amendments also fail to add to Plaintiff's claims for denial of fair trial or deprivation of federal civil rights under § 1983.  Accordingly, Plaintiff's request for leave to amend is DENIED.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's § 1983 claims for (1) deprivation of federal civil rights; (2) false arrest; (3) malicious prosecution; (4) malicious abuse of process; (5) denial of fair trial; and (6) municipal liability is GRANTED.  Plaintiff's request to amend the Complaint is DENIED.  As Plaintiff has voluntarily dismissed his claims for intentional infliction of emotional distress and harassment, the only remaining claim is

Plaintiff's cause of action against Lassiter for assault and battery.  The Court declines to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(3) and therefore DISMISSES this claim without prejudice.  As Plaintiff's federal and state claims have been dismissed, the Clerk of the Court is respectfully directed to terminate the motion (Doc. 12) and close this case.

It is SO ORDERED.

Dated: March 18, 2013
       White Plains, New York

Edgardo Ramos, U.S.D.J.